## STATE OF CONNECTICUT *v.* ESTEBAN Q. HERNAIZ
## (AC 33297)

Lavine, Robinson and Pellegrino, Js.

Argued November 13, 2012—officially released February 19, 2013

*John C. Drapp III*, assigned counsel, with whom, on the brief, were *Joseph A. Jaumann*, assigned counsel, and *Diana M. Gomez*, assigned counsel, for the appellant (defendant).

*Melissa Patterson*, assistant state's attorney, with whom, on the brief, was *Brian Preleski*, state's attorney, for the appellee (state).

ROBINSON, J. The defendant, Esteban Q. Hernaiz, appeals from the judgment of conviction, rendered after a jury trial, of one count of assault in the second degree in violation of General Statutes § 53a-60 (a) (2) and one count of carrying a dangerous weapon in violation of General Statutes § 53-206 (a). On appeal, the defendant's sole claim is that the trial court abused its discretion in denying his request to replace his trial counsel. We affirm the judgment of the trial court.

By way of a substitute long form information, the state charged the defendant with one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and one count of carrying a dangerous weapon in violation of General Statutes § 53-206 (a) in connection with a stabbing that occurred on December 6, 2008. The case was placed on the trial list and jury selection began on September 27, 2010. Before jury selection resumed on September 28, 2010, the defendant addressed the court regarding his attorney, stating: "I'm upset. I want him fired. . . . I don't want him as a lawyer. He's working against me." Upon further inquiry from the court, the defendant complained that he had not received evidence, particularly the results of a DNA test and police records of the state's potential witnesses, that he had requested. The court addressed these outstanding evidentiary issues with the attorneys and advised the defendant that his attorney had reviewed the entire file and that he would have an opportunity to review the evidence with his attorney before trial commenced.

At a status conference on October 5, 2010, the court reviewed pretrial motions and security issues with all of the parties. During that review, the defendant stated, "I don't want you as my lawyer. I said that from day one. I do not want you as my lawyer. It's real simple.

I don't want him as my lawyer." Despite declaring that it was "going over these issues right now," the court did not address the defendant's statement. It continued reviewing its trial procedure, directed the defendant's counsel to explain the trial process to the defendant and concluded the conference.

That afternoon, the court received a letter, dated October 1, 2010, which the defendant had written. In the letter, the defendant complained that his attorney had not given him his paperwork on the previous Friday, as the court had instructed. He asked how his lawyer could proceed to trial without providing him with any information and stated, "this man I don't want [him] as my [lawyer]." The defendant again raised the issue that he had not received the results of his DNA test nor the police records of witnesses. He concluded by asking for an opportunity to explain himself.

The next day, on October 6, 2010, the court addressed the defendant's letter. The court noted that the letter could "be interpreted, and I'm assuming on an appellate review it probably would be interpreted, as an unequivocal request . . . not to have [his current attorney] represent him. So as a result of that, I told the attorneys yesterday that I would deal with this issue today." After the defendant's attorney indicated that he was ready for trial and willing to remain the attorney on record, the court turned to the defendant. When asked why he no longer wanted his attorney, the defendant said that his attorney lied to him. He explained that his attorney had seen him four times while the defendant had been incarcerated and each time the attorney would have "a new different story" about what the plea offer would be. The defendant also maintained that his attorney lied both to him and his mother about whether he could win the case. He stated that he did not feel safe and that his attorney was not doing his best work. Finally,

the defendant claimed that his attorney never communicated with him, that the private investigator waited until the last minute to speak to witnesses despite receiving their information six months earlier and that he did not feel safe because the private investigator wore different colored shoes.

When the defendant concluded, the court asked his attorney questions regarding the allegations. Specifically, it asked about how and when plea offers were made, what actions the attorney had taken to prepare for trial and how much communication he had with his client. The attorney stated that he had reviewed all the documents, spoken with potential witnesses, worked with a private investigator from the public defender's office, discussed reports from the private investigator with his client, investigated his other pending cases, presented his client with the strengths and weaknesses of his case, communicated offers to him and pursued evidence from the state. The court then asked the defendant if he would like to hire a new lawyer or have a public defender. The defendant stated that he wanted to hire another lawyer. When the court asked if he wanted to represent himself, the defendant said, "No, I would like to have a lawyer present, but I would like to hire one, sir." The court learned that the defendant's current attorney was his fourth attorney and again confirmed that the defendant did not want to represent himself. The defendant indicated that he had not yet communicated with an attorney, but, in response to the court's question of whether he would tell a new lawyer that a jury was selected and evidence was set to begin the next day, he stated: "That's what I've been trying to tell you the week before . . . I didn't want him as my lawyer. I'd say so. . . . I don't want any of this in my lawyer before all this start. Because I will try to get a lawyer. I mean, you remember? I said it. I didn't want him being my lawyer."

After a short recess, the court gave its oral decision. It began by identifying the issue, namely, that the defendant was seeking to hire new counsel, not to proceed as a self-represented litigant or have another special public defender appointed. The court found that the defendant's prior request at the start of jury selection was not an unequivocal request for new counsel, but rather a request for information and evidence. It then analyzed the defendant's request pursuant to the exceptional circumstances test first enunciated in Connecticut in *State* v. *Drakeford*, 202 Conn. 75, 83–84, 519 A.2d 1194 (1987). The court found that it had given the defendant and his counsel time to discuss the plea offers, that the defendant was offered a plea that he did not want to accept, that the defendant's counsel communicated with the defendant regarding the strengths and weaknesses of the case as well as the likelihood of prevailing and that on a particular day, the defendant's counsel wore two different colored shoes.[1] The court credited defense counsel's representations that an investigation had taken place, that he visited with the defendant four times and that he had the defendant transported to court to discuss the case. Based on the defendant's representations regarding his and his mother's conversations with his attorney, the court made the "logical reasonable inference that [the defendant's counsel was] explaining to him the strengths and weaknesses of the case, and the risks of his exposure of incarceration if he were convicted. [The defendant] calls that lying. The court doesn't consider that lying." It concluded that there was "insufficient evidence in front of [the court] to find . . . exceptional circumstances for relieving [the defendant's counsel] from representing [the defendant]." Nevertheless, the court

---

[1] The defendant corrected the court at the end of the hearing, clarifying that the private investigator was the person who had worn two different colors of shoes, not his attorney.

noted that if the defendant "wishes to hire counsel today, and that counsel were to indicate to the court today, or first thing tomorrow morning, then he can have counsel to represent him. And the court will deal with any issues that may develop as it relates to that. But at this point in time, as of right now, the court is not relieving [the defendant's counsel] from representing [the defendant] at trial."

On October 7, 2010, the court again addressed the defendant's assertion that he had requested new counsel during jury selection. After listening to the court proceeding from September 28, 2010, the court concluded that "the prior exchange on [September 28] was not an unequivocal request for counsel." The defendant did not obtain new counsel and the trial began. On October 15, 2010, the jury returned a verdict of guilty of assault in the second degree, a lesser included offense to the charged offense of assault in the first degree, and carrying a dangerous weapon. On February 18, 2011, the court sentenced the defendant to a total effective term of eight years of incarceration. This appeal followed.

"The United States Supreme Court has definitively held that due process requires that the accused have the assistance of counsel for his defense. . . . The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." (Internal quotation marks omitted.) *State* v. *Williams*, 102 Conn. App. 168, 204, 926 A.2d 7, cert. denied, 284 Conn. 906, 931 A.2d 267 (2007). "There is [however] no unlimited opportunity to obtain alternate counsel. . . . It is within the trial court's discretion to determine whether a factual basis exists for appointing new counsel. . . . Moreover, absent a factual record revealing an abuse of that discretion, the court's failure to allow new counsel is not reversible error." (Citations omitted;

internal quotation marks omitted.) *State* v. *Drakeford*, supra, 202 Conn. 83.

"A defendant has no unbridled right to discharge counsel *on the eve of trial.* . . . In order to work a delay by a last minute discharge of counsel there must exist exceptional circumstances." (Emphasis in original; internal quotation marks omitted.) Id., 83–84. "A request for substitution of counsel requires support by a substantial reason, and may not be used to achieve delay." Id., 83.

"While a criminal defendant's right to be represented by counsel implies a degree of freedom to be represented by counsel of [the] defendant's choice . . . this guarantee does not grant a defendant an unlimited opportunity to obtain alternate counsel on the eve of trial. . . . Although the court has a responsibility to inquire into and to evaluate carefully all substantial complaints concerning court-appointed counsel . . . the extent of such inquiry lies within the court's sound exercise of discretion. After it has given the defendant an adequate opportunity to inform it of his or her complaints, the court has broad discretion in determining whether circumstances warrant the appointment of new counsel or the dismissal of the defendant's existing counsel." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 102 Conn. App. 205.

"[An appellate court] must distinguish between a substantial and timely request for new counsel pursued in good faith, and one made for insufficient cause on the eve or in the middle of trial." *State* v. *Drakeford*, supra, 202 Conn. 82. "In evaluating whether the trial court abused its discretion in denying [the] defendant's motion for substitution of counsel, [an appellate court] should consider the following factors: [t]he timeliness of the motion; adequacy of the court's inquiry into the defendant's complaint; and whether the attorney/client

conflict was so great that it had resulted in total lack of communication preventing an adequate defense." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 102 Conn. App. 205.

The defendant claims that the court's denial of his request for new counsel was an abuse of discretion that warrants a reversal of his judgment of conviction. Though noting that no Connecticut authority applying the exceptional circumstances test to factually similar circumstances has allowed for a substitution of counsel, the defendant nevertheless urges this court to reverse the court's judgment. He cites the dissent in *State* v. *Watson*, 198 Conn. 598, 504 A.2d 497 (1986), as well as both the concurrence and the dissent in *State* v. *Hamilton*, 228 Conn. 234, 636 A.2d 760 (1994), to support his position. We are not persuaded.

"[I]t is manifest to our hierarchical judicial system that [our Supreme Court] has the final say on matters of Connecticut law and that the Appellate Court and Superior Court are bound by [its] precedent. See, e.g., *Jolly, Inc.* v. *Zoning Board of Appeals*, 237 Conn. 184, 195, 676 A.2d 831 (1996) ('[i]t is axiomatic that a trial court is bound by Supreme Court precedent'); *Martin* v. *Plainville*, 40 Conn. App. 179, 182, 669 A.2d 1241 (1996) (Appellate Court, as intermediate court, is prevented from 'reexamining or reevaluating Supreme Court precedent'), aff'd, 240 Conn. 105, 689 A.2d 1125 (1997); *Lash* v. *Aetna Casualty & Surety Co.*, 36 Conn. App. 623, 624, 652 A.2d 526 (1995) (Appellate Court is 'bound by Supreme Court precedent'), aff'd, 236 Conn. 318, 673 A.2d 84 (1996)." *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010).

Our precedent requires that exceptional circumstances must exist in order to discharge counsel on the eve of trial. *State* v. *Drakeford*, supra, 202 Conn. 83–84.

Before making its decision, the court thoroughly questioned the defendant and the attorneys. It probed the defendant's reasons for wanting new counsel and elicited information from the defendant's attorney about the defendant's allegations. The court also asked about the defendant's efforts to obtain new counsel given that evidence would begin the following morning. The defendant's attorney detailed how he had prepared for trial and stated his belief that he could continue to represent the defendant. The defendant admitted that he had not yet begun to seek out new counsel. After a recess, the court examined the defendant's reasons for seeking new counsel and concluded that they did not establish exceptional circumstances. Even after its ruling, the court indicated that it would allow a new attorney to enter an appearance if he or she did so by the next morning. Moreover, the defendant conceded at oral argument before this court that exceptional circumstances did not exist in this case. Given that the defendant made his request the day before the evidence was set to begin, that the court thoroughly inquired into the defendant's complaint and that the defendant's attorney expressed that he could continue to represent the defendant, we conclude that the court did not abuse its discretion in finding that exceptional circumstances did not exist and, accordingly, in denying the defendant's request for new counsel.

The judgment is affirmed.

In this opinion the other judges concurred.