******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* KERLYN T.*
(AC 40163)

Prescott, Elgo and Pellegrino, Js.

*Syllabus*

Convicted of the crimes of aggravated sexual assault in the first degree, home invasion, risk of injury to a child, assault in the second degree with a firearm, unlawful restraint in the first degree, threatening in the first degree and assault in the third degree, the defendant appealed to this court. He claimed that the trial court erred in finding that his jury trial waiver was knowing, intelligent and voluntary under the totality of the circumstances, and by failing to conduct an adequate inquiry into the underlying facts giving rise to his request to remove his privately retained defense counsel. *Held*:

1. The trial court did not err when it determined that the defendant knowingly, intelligently, and voluntarily waived his right to a jury trial: although the defendant claimed that he was not competent at the time he waived his right to a jury trial, the record showed that prior to the waiver, he was twice determined to be competent by the trial court, and the record also indicated that the defendant was represented by counsel at the time of the waiver, that the defendant believed that he had sufficient time to discuss the decision with defense counsel, that the defendant was satisfied with the advice of defense counsel, that the court explained the purpose of the canvass as it related to the waiver, that the defendant understood the right he was giving up, and that the court informed the defendant that his election was not revocable; moreover, the defendant could not prevail on his claim that the colloquy was constitutionally inadequate because it failed to elicit information regarding his background, experience, conduct, and mental and emotional state, as the defendant was approximately thirty-two years of age, had lived in the United States for all of his adult life, and was familiar with the court system, and our courts repeatedly have rejected claims that an otherwise valid waiver of the right to a jury is undermined by the trial court's failure to include a specific item of information in its canvass.

2. The trial court did not abuse its discretion when it determined that the defendant had not demonstrated a substantial reason that warranted either the discharge of defense counsel or a more searching inquiry into the request; the record indicated that the trial court inquired as to the reason for the defendant's request to discharge defense counsel and requested that defense counsel address the issue on the record, the defendant's principal complaint concerned a matter of trial strategy, which does not necessarily compel the appointment of new counsel, the defendant's own behavior toward defense counsel contributed to the frequent delays at trial, and given that at no other time during the proceedings did the defendant state his desire to discharge defense counsel, request the appointment of a public defender, or request to proceed as a self-represented party, and given that the defendant demonstrated through his subsequent cooperation with defense counsel during his case-in-chief that his relationship with defense counsel had not wholly broken down, the court had good reason to doubt whether the defendant's request was based on a substantial reason.

Argued March 14—officially released July 30, 2019

*Procedural History*

Substitute information, in the first case, charging the defendant with the crimes of criminal attempt to commit assault in the first degree, intimidating a witness, strangulation in the second degree, and assault in the third degree, and substitute information, in the second case, charging the defendant with three counts of the crime of threatening in the first degree, and with the

crimes of aggravated sexual assault in the first degree, home invasion, risk of injury to a child, assault in the second degree with a firearm, assault in the third degree, kidnapping in the first degree with a firearm, unlawful restraint in the first degree, criminal possession of a firearm, and criminal violation of a protective order, brought to the Superior Court in the judicial district of Danbury, where the cases were consolidated and tried to the court, *Russo, J.*; thereafter, the court granted the defendant's motion for a judgment of acquittal as to the charge of criminal attempt to commit assault in the first degree; judgments of guilty of two counts each of assault in the third degree and threatening in the first degree, and of aggravated sexual assault in the first degree, home invasion, risk of injury to a child, assault in the second degree with a firearm, and unlawful restraint in the first degree, from which the defendant appealed to this court. *Affirmed.*

*James B. Streeto*, senior assistant public defender, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Sharmese Hodge*, assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Kerlyn T., appeals from the judgments of conviction, rendered following a trial to the court, of aggravated sexual assault in the first degree in violation of General Statutes § 53a-70a (a) (1), home invasion in violation of General Statutes § 53a-100aa (a) (2), risk of injury to a child in violation of General Statutes § 53-21 (a) (1), assault in the second degree with a firearm in violation of General Statutes § 53a-60a (a), unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a), and two counts each of threatening in the first degree in violation of General Statutes § 53a-61aa (a) (3),[1] and assault in the third degree in violation of General Statutes § 53a-61 (a) (1). On appeal, the defendant claims that the court erred (1) in finding that his jury trial waiver was knowing, intelligent and voluntary, and (2) by failing to conduct an adequate inquiry into the underlying facts giving rise to his request to remove his privately retained counsel. Upon review, we conclude that the court did not err when it determined that the defendant's jury trial waiver was knowing, intelligent and voluntary, nor did it err when it denied the defendant's request to remove defense counsel midtrial without a more searching inquiry. Accordingly, we affirm the judgments of conviction.

In its oral decision, the court found the following relevant facts. On May 26, 2013, the defendant confronted and assaulted the victim. On May 28, 2014, the defendant broke into the victim's Danbury apartment armed with a semiautomatic assault style rifle. Although the victim was not present, the defendant remained in the apartment, concealing himself therein. The victim returned to the apartment later that evening accompanied by her minor child[2] and a coworker. Once inside, they were confronted by the defendant and held at gunpoint inside for approximately three hours. During that time, the defendant forcefully restrained the victim, bound her to a chair, taped her mouth shut and, thereafter, assaulted her both physically and sexually, while the minor child and the coworker were present in the apartment.

The defendant was subsequently arrested. The operative informations charged the defendant with aggravated sexual assault in the first degree in violation of § 53a-70a (a) (1), home invasion in violation of § 53a-100aa (a) (2), risk of injury to a child in violation of § 53-21 (a) (1), assault in the second degree with a firearm in violation of § 53a-60a (a), unlawful restraint in the first degree in violation of § 53a-95 (a), two counts of assault in the third degree in violation of § 53a-61 (a) (1), three counts of threatening in the first degree in violation of § 53a-61aa (a) (3), criminal attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1), strangula-

tion in the second degree in violation of General Statutes (Rev. to 2013) § 53a-64bb (a), intimidating a witness in violation of General Statutes § 53a-151a, kidnapping in the first degree with a firearm in violation of General Statutes § 53a-92a, criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1),[3] and criminal violation of a protective order in violation of General Statutes (Rev. to 2013) § 53a-223.

A six day trial to the court was held in February and May, 2016. At trial, the court heard testimony from, among others, the victim, the coworker, and the defendant relating to the May 26, 2013 confrontation and the May 28, 2014 home invasion. After largely crediting the testimony of the victim and the coworker, the court found the defendant guilty on nine counts.[4] This appeal followed. Additional facts will be provided as necessary.

I

On appeal, the defendant first claims that the court erred when it determined that he knowingly, intelligently and voluntarily waived his right to a jury trial under the totality of the circumstances.[5] Specifically, the defendant claims that his waiver was constitutionally inadequate because, despite stating that he was not ready to make such a decision, the choice was "imposed on [him] by the combined pressure of the court, the prosecutor, and [defense counsel]." The defendant further claims that, at a minimum, the court should have informed the defendant of, among other things, the number of jurors that comprise a jury panel and that a jury's verdict must be unanimous. We disagree.

The following additional facts are relevant to the defendant's claim. On January 22, 2015, following the defendant's arrest, Attorney Mark Johnson, a public defender, appeared before the court on behalf of the defendant and requested a formal competency evaluation of the defendant pursuant to General Statutes § 54-56d, on the basis of Attorney Johnson's belief that the defendant was unable to assist in his own defense.[6] During an otherwise brief hearing, the court granted the motion after Attorney Johnson stated that the defendant's state of mind was impairing his ability to prepare a proper defense.

The competency evaluation was conducted on February 13, 2015, by the Office of Forensic Evaluations, which determined that the defendant, at that time, was not competent to stand trial. It further concluded that there was a "substantial probability [that the defendant] could be restored to competence within the maximum statutory time frame," and, therefore, "recommend[ed] an initial commitment period of sixty days . . . [in] the *least restrictive setting* . . . ." (Emphasis added.) After the court adopted the evaluation, the defendant was admitted to Whiting Forensic Division of Connecticut Valley Hospital (Whiting) for treatment and rehabili-

tation. On May 7, 2015, the court, *Russo, J.*, adopted the conclusion of a second competency evaluation administered at Whiting on April 23, 2015, that determined that the defendant was competent to stand trial.[7]

On November 6, 2015, after the defendant rejected the state's offer of a plea agreement, the court notified the defendant that the matter would be placed on the trial list and that jury selection would commence the following month. On February 6, 2016, when the defendant appeared before Judge Russo for jury selection, the defendant requested that the court provide him with more time to consider whether to elect a jury trial or a court trial. The court denied his request.

At that hearing, defense counsel, Attorney Gerald Klein,[8] was unable to ascertain whether the defendant wanted to elect a jury trial or a court trial and moved for a second § 54-56d competency evaluation due to his belief that the defendant was unable to continue assisting with his own defense. In response, the court engaged the defendant in a lengthy colloquy and permitted him to speak freely about various grievances, which ranged from his frustrations with the discovery process to an alleged assault that occurred during his confinement at Whiting.

At the conclusion of the colloquy, the court denied Attorney Klein's request for a second competency evaluation, stating: "[A]fter spending nearly [one and one-half hours] with [the defendant] on a number of topics, [I] cannot justify ordering the examination for a variety of reasons. For one, [the defendant] has presented himself here today, as I have witnessed him in the past, [as] a competent, articulate, [and] to steal a phrase from [Attorney] Klein, [as] a very measured individual, who, at least in my view, certainly understands the nature of the proceedings here in court, certainly understands the function of the personnel that are assembled in this very room, certainly understands the nature of the proceedings against him and the charges that have been alleged against him. . . . I also believe—and I realize that . . . [Attorney] Klein may [disagree] on this point—that [the defendant] does have the ability to assist in his own defense. . . . So, I do not find that the examination at this point in time is justified."

The court proceeded to address the issue of whether the defendant would elect a jury or a court trial. Taking into account the defendant's earlier request for more time, the court provided an additional opportunity for the defendant to meet with Attorney Klein. After a forty minute recess, the defendant waived his right to a jury trial and elected a court trial. Prior to making that decision, the following canvass occurred on the record.

"The Court: . . . I would ask both counsel to pay particular[ly] close attention to my questions. If I miss any, please let me know, so that we can complete the

canvass. . . . [O]n the issue of waiving your constitutional right to a jury trial . . . the United States constitution and our state constitution both mandate that you have a constitutional right to be tried by a jury of your peers. Do you understand that, [sir]?

"The Defendant: Yes, Your Honor.

"The Court: And after speaking with you and, equally as important, speaking with [Attorney] Klein, you have elected to waive that right to a jury trial and you've elected to have [what is] called a courtside trial, meaning that, likely me or someone like me, another Superior Court judge, would be the finder of fact in the trial and also would be the sentencing judge if you were found guilty. . . . Is that your understanding, [sir]?

"The Defendant: Yes, I understand . . . .

* * *

"The Court: [Sir], are you on any drugs or medication that would affect your ability to understand what I'm saying right now?

"The Defendant: No, Your Honor.

"The Court: And have you had time to consult with [Attorney] Klein about your election to waive your constitutional right to a trial by jury and [to] elect a courtside trial? . . .

"The Defendant: Yes, Your Honor.

"The Court: And I believe [Attorney] Klein . . . said that he would encourage you to waive your right to a jury trial and elect a trial by the court. And do you agree with him on that suggestion, [sir]?

"The Defendant: Yes, Your Honor.

"The Court: And are you aware . . . [that], as you stand there today, you are cloaked with the presumption of innocence, and I look at you as a person who is presumed innocent?

"The Defendant: Yes, Your Honor.

* * *

"The Court: Do you understand, [sir], that you have been charged with those charges that I've just recited for you here today on the record? . . .

"The Defendant: Yes, Your Honor, I understand.

* * *

"The Court: Is there any other question that either counselor would feel comfortable if I ask?

* * *

"[Attorney] Klein: . . . I would suggest . . . [that] the court [tell] him that this is a final decision as to these matters, and he can't change his mind . . . .

"The Court: All right. And [the defendant is] nodding

his head in agreement with [defense counsel]. I do take that as his—

"The Defendant: Yes, Your Honor.

"The Court: —his affirmation to the court that he won't change his mind and it will be a courtside trial.

\* \* \*

"[Attorney] Klein: Thank you, Your Honor.

"The Court: Thank you, [sir].

"The Defendant: No, thank you, Your Honor. I appreciate that. God bless."

As a preliminary matter, we note that the defendant raises this claim for the first time on appeal, requesting review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).[9] Because the record is adequate for review and the claim is of a constitutional nature,[10] we agree with the defendant that the claim is reviewable under *Golding*.[11] Accordingly, we next consider whether the defendant's claim satisfied the third prong of *Golding*, namely, whether "the alleged constitutional violation . . . exists and . . . [whether it] deprived the [defendant] of a fair trial." (Internal quotation marks omitted.) *In re Yasiel R.*, supra, 781.

"The right to a jury trial in a criminal case is among those constitutional rights which are related to the procedure for the determination of guilt or innocence. The standard for an effective waiver of such a right is that it must be knowing and intelligent, as well as voluntary. . . . Relying on the standard articulated in *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), we have adopted the definition of a valid waiver of a constitutional right as the intentional relinquishment or abandonment of a known right. . . . Our task, therefore, is to determine whether the totality of the record furnishes sufficient assurance of a constitutionally valid waiver of the right to a jury trial. . . . Our inquiry is dependent upon the particular facts and circumstances surrounding [each] case, including the background, experience, and conduct of the accused." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Gore*, 288 Conn. 770, 775–77, 955 A.2d 1 (2008).

Moreover, "[i]n *Gore*, our Supreme Court concluded that [although] the right to a jury trial must be personally and affirmatively waived by the defendant in order to render such waiver valid . . . [the] canvass need not be overly detailed or extensive . . . . [Rather] it should be sufficient to allow the trial court to obtain assurance that the defendant: (1) understands that he or she personally has the right to a jury trial; (2) understands that he or she possesses the authority to give up or waive the right to a jury trial; and (3) voluntarily

has chosen to waive the right to a jury trial and to elect a court trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Scott*, 158 Conn. App. 809, 815–16, 121 A.3d 742, cert. denied, 319 Conn. 946, 125 A.3d 527 (2015). Furthermore, this court has held that "the canvass required for a jury trial waiver [need not] be as extensive as [for example] the canvass constitutionally required for a valid guilty plea because in pleading guilty, a defendant forfeits a number of constitutional rights." (Internal quotation marks omitted.) Id., 816.

Critically, our Supreme Court "repeatedly has determined that, even when a defendant has a history of mental illness and/or incompetency, if he presently is competent, the trial judge need not engage in a more searching canvass than typically is required before accepting the defendant's waiver of his right to a jury." *State* v. *Rizzo*, 303 Conn. 71, 110, 31 A.3d 1094 (2011), cert. denied, 568 U.S. 836, 133 S. Ct. 133, 184 L. Ed. 2d 64 (2012). In such a case, we look to the "totality of the circumstances analysis to determine whether the defendant's personal waiver of a jury trial was made knowingly, intelligently and voluntarily." *State* v. *Gore*, supra, 288 Conn. 782 n.12.

On appeal, the defendant claims, in essence, that the trial court's canvass was constitutionally inadequate because he was suffering from an unspecified mental illness at the time he waived his right to a jury trial and, therefore, his waiver could not be knowing, intelligent, and voluntary.[12] Despite the defendant's suggestion that he was not competent at the time he waived his right to a jury trial, the record shows that prior to the waiver he was twice determined to be competent by Judge Russo. See *State* v. *Ouellette*, 271 Conn. 740, 752–53, 859 A.2d 907 (2004) ("It is undisputed that an accused who is competent to stand trial also is competent to waive constitutional rights. . . . Thus, any criminal defendant who has been found competent to stand trial, ipso facto, is competent to waive the right to [a jury trial] as a matter of federal constitutional law." [Citation omitted; footnote omitted; internal quotation marks omitted.]); see also *State* v. *Rizzo*, supra, 303 Conn. 110 (court denying defendant's claim that more robust canvass was necessary because of his history of mental illness).

Here, in addition to the competency determinations, the record also indicates that the defendant was represented by counsel at the time of the waiver and that he believed that he had sufficient time to discuss the decision with Attorney Klein. Furthermore, the defendant stated on the record that he was satisfied with Attorney Klein's advice. See *State* v. *Scott*, supra, 158 Conn. App. 817 (defendant's consultation with defense counsel concerning right to waive jury trial supports conclusion that waiver was constitutionally sound).

In addition, the record indicates that the court explained the purpose of the canvass as it related to the waiver and that the defendant understood the right that he was giving up. See *State* v. *Woods*, 297 Conn. 569, 586, 4 A.3d 236 (2010). During the canvass, the defendant's responses were delivered in a clear and unequivocal, "yes, Your Honor," "no, Your Honor." See *State* v. *Scott*, supra, 158 Conn. App. 818 ("[t]he defendant's immediate and unequivocal replies to the court's inquiries reflected his strong desire to proceed to trial before the court, not a jury" [internal quotation marks omitted]). Finally, at the conclusion of the canvass, the court asked whether it had missed anything. In response to the court's inquiry, Attorney Klein asked the court to inform the defendant that his election was not revocable, and the court promptly did so, thus, assuring itself that the defendant knew he could not change his mind.

Despite these facts, the defendant further asserts that the colloquy was constitutionally inadequate because it failed to elicit information regarding "the defendant's background, experience, conduct, and . . . mental and emotional state." Specifically, the defendant argues that, because he was reared in a country with a civil legal system, and because he does not possess a high school diploma, the court's failure to provide a more thorough canvass constitutes reversible error.

As previously stated in this opinion, "our inquiry is dependent upon the particular facts and circumstances surrounding [each] case, including the background, experience, and conduct of the accused." (Internal quotation marks omitted.) *State* v. *Gore*, supra, 288 Conn. 777. The record indicates that at the time of the waiver, the defendant was approximately thirty-two years of age, had lived in the United States for all of his adult life, and was familiar with the court system, having pleaded guilty to a series of misdemeanors in 2012 in connection with three separate criminal matters. See *State* v. *Smith*, 100 Conn. App. 313, 324, 917 A.2d 1017 (in determining whether defendant validly waived right to jury trial, court considered fact that defendant "had some familiarity with the court system, having a lengthy criminal history that included robberies"), cert. denied, 282 Conn. 920, 925 A.2d 1102 (2007).

In sum, "[t]he court's failure to include in its canvass [certain information, such as] the number of jurors to which the defendant would be entitled and the requirement that the jury's verdict be unanimous does not compel the conclusion that the defendant's waiver was constitutionally deficient. Our courts [repeatedly] have declined to require [such] a formulaic canvass and have rejected claims that an otherwise valid waiver of the right to a jury is undermined by the trial court's failure to include a specific item of information in its canvass." (Internal quotation marks omitted.) *State* v. *Scott*, supra, 158 Conn. App. 819; see also *State* v. *Rizzo*, supra, 303

Conn. 99–105.

For these reasons, we conclude that the court did not err when it determined that the defendant knowingly, intelligently, and voluntarily waived his right to a jury trial. Accordingly, the defendant's claim does not satisfy the third prong of *Golding* and, therefore, fails.

II

The defendant next claims that the trial court erred in failing to conduct an adequate inquiry following the defendant's request to replace his privately retained counsel. Specifically, he claims that the court abused its discretion because it "simply rejected the defendant's grievances on their face" and "failed to conduct any type of inquiry" into his request. (Emphasis omitted; internal quotation marks omitted.) We disagree.

The following facts and procedural history are relevant to the defendant's claim. On May 11, 2016, prior to the start of the fourth day of trial, the defendant made an oral motion to discharge Attorney Klein, claiming that he was not representing his interests. The court inquired as to the reason for the defendant's request. The defendant explained that he did not like that Attorney Klein encouraged him to accept the plea agreement offered by the state, and, additionally, he thought that Attorney Klein was not properly conducting cross-examination of the witnesses because he was not putting on evidence in response to their testimony. The court denied the motion after reminding the defendant that he would be able to put on evidence and call his own witnesses during his case-in-chief after the state rested its case.

As a preliminary consideration, "we note that we look with a jaundiced eye at complaints regarding adequacy of counsel made on the eve of trial, or during the trial itself"; *State* v. *Robinson*, 227 Conn. 711, 726, 631 A.2d 288 (1993); because, "[w]hile a criminal defendant's right to be represented by counsel implies a degree of freedom to be represented by counsel of [the] defendant's choice . . . this guarantee does not grant a defendant an unlimited opportunity to obtain alternate counsel on the eve of trial. . . . A request for substitution of counsel requires support by a *substantial reason*, and may not be used to achieve delay." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Gonzalez*, 205 Conn. 673, 683, 535 A.2d 345 (1987). "Where a defendant voices a seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction." (Internal quotation marks omitted.) *State* v. *Robinson*, supra, 725.

In challenging the court's inquiry, the defendant does not claim that the request to discharge counsel was, in fact, supported by a "substantial reason." Rather, he claims that simply because he made such a request, the court should have initiated a more searching inquiry

into the underlying reasons and, at a minimum, explained the different legal options available to him and allowed him to seek alternative representation. We are not persuaded.

"If [t]he defendant's [request falls] . . . short of a seemingly substantial complaint, we have held that the trial court need not inquire into the reasons underlying the defendant's dissatisfaction with his attorney. . . . The extent of an inquiry into a complaint concerning defense counsel lies within the discretion of the trial court." (Citation omitted; internal quotation marks omitted.) *State* v. *Robinson*, supra, 227 Conn. 725. "In evaluating whether the trial court abused its discretion in denying [the] defendant's motion for substitution of counsel, [an appellate court] should consider the following factors: [t]he timeliness of the motion; adequacy of the court's inquiry into the defendant's complaint; and whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense." (Internal quotation marks omitted.) *State* v. *Hernaiz*, 140 Conn. App. 848, 854–55, 60 A.3d 331, cert. denied, 308 Conn. 928, 64 A.3d 121 (2013).

In applying the abuse of discretion standard to the record before us, we are particularly mindful of the context in which the motion to discharge counsel arose and that the court had an opportunity to observe the defendant's interactions with Attorney Klein over time and, therefore, was in a superior position to determine whether there was a proper factual basis for the defendant's request. See *State* v. *Rosado*, 52 Conn. App. 408, 430, 726 A.2d 1177 (1999) ("It is within the trial court's discretion to determine whether a factual basis exists for appointing new counsel. . . . [A]bsent a factual record revealing an abuse of [the court's] discretion, the court's failure to allow new counsel is not reversible error." [Internal quotation marks omitted.]).

Principally, the defendant's claim that the court simply dismissed his request outright is belied by the record. The record indicates that the court *did*, in fact, inquire as to the reason for his request to discharge Attorney Klein, at which point, the defendant repeated his complaints. The court also made an additional inquiry by requesting that Attorney Klein address the issue on the record.[13] Furthermore, we note that the defendant's principal complaint concerned a matter of trial strategy. As our Supreme Court has stated: "[A difference] of opinion over trial strategy . . . [does] not necessarily compel the appointment of new counsel." (Internal quotation marks omitted.) *State* v. *Robinson*, supra, 227 Conn. 726–27. In addition, it was the defendant's own behavior toward Attorney Klein that contributed to the frequent delays at trial. See id., 727 ("[a] defendant is not entitled to demand a reassignment of counsel simply on the basis of a breakdown in com-

munication which he himself induced" [internal quotation marks omitted]).

Given that at no other time during the proceedings did the defendant state his desire to discharge defense counsel, request the appointment of a public defender, or request to proceed as a self-represented party, and given that the defendant demonstrated through his subsequent cooperation with defense counsel during his case-in-chief that his relationship with defense counsel had not wholly broken down, the court had good reason to doubt whether the defendant's request was based on a "substantial reason." Accordingly, we conclude that the court did not abuse its discretion when it determined that the defendant had not demonstrated a substantial reason that warranted either the discharge of defense counsel or a more searching inquiry into the request.

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e; *State* v. *Jose G.*, 290 Conn. 331, 963 A.2d 42 (2009).

[1] Although § 53a-61aa (a) (3) was the subject of technical amendments in 2016; see Public Acts 2016, No. 16-67, § 6; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] The defendant is the biological father of the minor child.

[3] Although § 53a-217 (a) (1) was the subject of technical amendments in 2015; see Public Acts, Spec. Sess., June, 2015, No. 15-2, § 6; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[4] During trial, the defendant moved for a judgment of acquittal, and the court dismissed one count of criminal attempt to commit assault in the first degree. After the close of evidence, the court found the defendant not guilty of strangulation in the second degree, criminal violation of a protective order, kidnapping in the first degree with a firearm, one count of threatening in the first degree, and criminal possession of a firearm. The court also dismissed one count of intimidating a witness for improper pleading.

[5] Without expressly challenging the court's competency findings, the defendant seems to suggest that he was not competent when the waiver was made because of an unspecified mental illness that he was suffering from at the time. For the reasons stated herein, we are not persuaded.

[6] General Statutes § 54-56d provides in relevant part: "(a) . . . a defendant is not competent if the defendant is *unable* to understand the proceedings against him or her or *to assist in his or her own defense*." (Emphasis added.)

[7] The following colloquy took place between defense counsel, Attorney Johnson, and the court during the defendant's second competency hearing on May 7, 2015.

"The Court: [I have] . . . a report dated April 27, 2015, from the Department of Mental Health and Addiction Services. That report [is] very comprehensive, and it does conclude that [the defendant], who is present in court today . . . has been restored to competency and does demonstrate a sufficient understanding of the proceedings and can ably assist in his own defense. [Attorney] Johnson?

"[Attorney] Johnson: Yes, Your Honor . . . as I said, [we would stipulate to the findings contained in that exhibit and request] that he be released back to [the Department of Correction] at this time."

[8] Attorney Johnson represented the defendant during the preliminary stages of his criminal proceedings relating to the May, 2014 home invasion, in addition to a number of other matters that arose prior to that arrest. Attorney Johnson was later replaced by privately retained counsel, Attorney Klein, in June, 2015. Thereafter, Attorney Klein represented the defendant

during all relevant proceedings.

[9] Pursuant to *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis omitted; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see also *In re Yasiel R.*, supra, 317 Conn. 781.

[10] Although the defendant also asserts a violation of our state constitution, he has provided no independent state constitutional analysis. We, thus, limit our review to the defendant's federal constitutional claim. See *State* v. *Jarrett*, 82 Conn. App. 489, 498 n.5, 845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004).

[11] Additionally, the defendant requests that this court use its supervisory authority to establish a more uniform procedure for conducting a canvass on the waiver of the right to a jury trial. "Supervisory authority is an extraordinary remedy that should be used sparingly . . . ." (Internal quotation marks omitted.) *State* v. *Edwards*, 314 Conn. 465, 498, 102 A.3d 52 (2014). Because traditional protections are adequate to safeguard the rights of a defendant who waives his right to a jury trial and to safeguard the integrity of the judicial system, we decline to exercise our supervisory powers in the present case. See *State* v. *Scott*, 158 Conn. App. 809, 820–21, 121 A.3d 742, cert. denied, 319 Conn. 946, 125 A.3d 527 (2015).

[12] In support of his claim, the defendant directs our attention to dicta in our Supreme Court's decision in *State* v. *Ouellette*, 271 Conn. 740, 754–55 n.18, 859 A.2d 907 (2004), in which the court addressed a similar claim. In *Ouellette*, the defendant claimed that "the trial court failed to canvass [the defendant] adequately regarding his waiver of the right to a jury trial in light of his history of mental illness." Id., 754 n.18. In considering that claim, the court noted that the nonbinding authority cited by the defendant did not "[constitute] persuasive precedent for [his] claim." Id. In the present case, for example, one of the principal cases now cited by the defendant, *United States* v. *Christensen*, 18 F.3d 822, 823 (9th Cir. 1994), which also was relied on by the defendant in *Ouellette*, was determined to be of no consequence because the court in *Christensen* "did not have the benefit of a recent and comprehensive evaluation of the defendant's mental condition at the time of the jury trial waiver"; *State* v. *Ouellette*, supra, 755 n.18; and, thus, the case was materially distinct from the present case. Here, as in *Ouellette*, the facts are equally as inapposite in that the trial court had a recent and comprehensive competency evaluation of the defendant at the time of the waiver.

[13] In response, Attorney Klein stated: "The only thing I can add, You Honor . . . is that I read a case just [last] week . . . [regarding] whether a formal evidentiary hearing has to be held when someone seeks to remove counsel at a critical time in the proceeding . . . . [T]he judge in that case did just as Your Honor is doing, ask[ing] the reasons and if it doesn't find . . . a meaningful reason that would require sworn testimony, [then the decision would be within the court's discretion]."